**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

LaCREAM NEWMAN,

                              Plaintiff,

  v.                                           No. 04-CV-395
                                                 (TJM/DRH)

GEORGE B. DUNCAN, Superintendent of Great Meadow Correctional Facility; DAVID CARPENTER, Deputy Superintendent; PATRICK VANGUILDER, Deputy Superintendent of Security; WILLIAM MAZZUCA, Superintendent of Fishkill Correctional Facility; R. ERCOLE, Deputy Superintendent of Security; J. CONKLIN, Corrections Sergeant; and JOHN DOE, Corrections Officer,

                              Defendants.

---

**APPEARANCES:**                            **OF COUNSEL:**

LaCREAM NEWMAN
Plaintiff Pro Se
No. 02-A-3020
Auburn Correctional Facility
Post Office Box 618
Auburn, New York 13021

HON. ANDREW M. CUOMO          CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the              Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER
U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER[1]**

Plaintiff pro se LaCream Newman ("Newman"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, seven DOCS employees, violated his constitutional rights under the Eighth and Fourteenth Amendments.[2]  See Compl. (Docket No. 1).  Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket No. 36.  Newman opposes the motion.  Docket No. 41.  For the following reasons, it is recommended that defendants' motion be granted.

**I. Background**

The facts are presented in the light most favorable to Newman as the non-moving party.  See Ertman v. United States, 165 F. 3d 204, 206 (2d Cir. 1999).

On October 23, 2002, Newman was being transferred from Great Meadow Correctional Facility ("Great Meadow") to Fishkill Correctional Facility's ("Fishkill") Special Housing Unit ("SHU").[3]  See Pelc. Aff. (Docket No. 36), Ex. B.  Before arriving at Fishkill, Newman was temporarily housed at Downstate Correctional Facility ("Downstate").  Id.  While

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] Newman's Fourteenth Amendment claims were previously dismissed.  See Docket No. 28.

[3] SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-or double-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2004). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

being housed at Downstate, an inmate attempted to sexually assault Newman.  See Compl. at ¶ 7.  On October 24, 2002, Newman was transferred from Downstate to Fishkill.  See Pelc. Aff., Ex. B.  Upon arrival at Fishkill, Newman was assigned to a double occupancy cell.  See Compl. at ¶ 10.  On October 29, 2002, an inmate again attempted to sexually assault Newman.  See Compl. at ¶ 12; see also Harris Aff. (Docket No. 36) at Ex. A.  On November 15, 2002, Newman was transferred to Clinton Correctional Facility ("Clinton").  See Pelc. Aff., Ex. B.  This action followed.

## II. Discussion

Newman asserts six causes of action, each alleging that defendants' failure to house Newman in a single occupancy cell constituted cruel and unusual punishment under the Eighth Amendment.  Defendants seek judgment on all claims.

### A. Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248

(1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988). When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Id.; see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Exhaustion

Defendants contend that Newman has failed to demonstrate any reasonable excuse for failing to exhaust his administrative remedies as to his Eighth Amendment claim. See Defs. Mem. of Law (Docket No. 36) at 6-11. Newman contends that he failed to exhaust his administrative remedies after the attempted sexual assaults because (1) he was threatened by John Doe; (2) he was in transit between DOCS facilities; and (3) he was dealing with the

4

mental and emotional effects of the attempted assaults.  See Pl. Reply Mem. of Law (Docket No. 41) at 1-3.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), subjects suits concerning prison conditions brought under federal law to certain prerequisites.  Specifically, the PLRA dictates that a prisoner confined to any jail, prison, or correctional facility must exhaust all available administrative remedies prior to bringing any suit concerning prison life, "'whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'"  Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)); see also Jones v. Bock, 127 S. Ct. 910, 918-19 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (citation omitted)); Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006).  Administrative remedies include all appellate remedies provided within the system, not just those that meet federal standards.  Woodford, 126 S. Ct. at 2382-83.  However, the Second Circuit has recognized three exceptions to the PLRA's exhaustion requirement:[4]

> when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance

---

[4] It is unclear whether Woodford has overruled the Second Circuit's exceptions to the exhaustion requirement.  See Miller v. Covey, No. Civ. 05-649 (LEK/GJD), 2007 WL 952054, at *3-4 (N.D.N.Y. Mar. 29, 2007).  However, it is not necessary to determine what effect Woodford has on the Second Circuit's exceptions to the exhaustion requirement because Newman's contentions cannot prevail even under pre-Woodford case law.  See Ruggiero v. County of Orange, 467 F.3d 170, 176 (2d Cir. 2006)

procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero, 467 F.3d at 175 (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)

"The PLRA's exhaustion requirement is designed to 'afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004) (quoting Porter, 534 U.S. at 524-25)). "'[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" Id. (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)). Inmates must provide sufficient information to "allow prison officials to take appropriate responsive measures." Id.

DOCS has established a grievance procedure which includes a three-stage review and appeal process. See N.Y. Correct. Law § 139 (McKinney 2003); N.Y. Comp. Codes R. & Regs. tit. 7, § 701.1-.16 (2003);[5] Hemphill, 380 F.3d at 682-83. When an inmate files a grievance, it is investigated and reviewed by an Inmate Grievance Resolution Committee ("IGRC"). If the grievance cannot be resolved informally, a hearing is held. The IGRC decision may be appealed to the Superintendent of the facility. Finally, an inmate may appeal the Superintendent's decision to the Central Office Review Committee ("CORC"). N.Y. Comp. Codes R. & Regs. tit.7, § 701.7(c).

---

[5] The Court is aware that the sections governing the Inmate Grievance Program procedures in the Official Compilation of Codes, Rules & Regulations of the State of New York were re-numbered in June 2006. See Bell v. Beebe, No. Civ. 06-544 (NAM/GLD), 2007 WL 1879767, at *3 n.4 (N.D.N.Y. June 29, 2007). However, in the interests of clarity, the Court will cite the section numbers of the provisions that were in effect at the time Newman filed his complaint.

Here, it is undisputed that Newman's first attempt to file a grievance regarding the alleged sexual assaults did not occur until September 21, 2003, nearly one year after the alleged assaults. See Pl. Reply Statement of Material Facts (Docket No. 41) at Ex. 2; see also Newman Dep. (Ullman Decl. at Ex. 1, Docket No. 36) at 85-87.  In his complaint, Newman contends that he failed to file a timely complaint due to "fear." See Pl. Reply Statement of Material Facts at Ex. 2.  However, the Inmate Grievance Program ("IGP") supervisor at Clinton rejected Newman's attempt to file his complaint as a grievance because Newman failed to "expand on what/who caused the 'fear.'" Id.  The IGP supervisor also noted that Newman had been housed at Clinton for the previous nine months and, thus, had "ample opportunity to file [his] complaint before [September 2003]." Id.  Newman attempted to file an appeal of the IGP supervisor's decision to the Superintendent, but the supervisor advised Newman "[t]here is no provision to appeal the IGP Supervisors decision (to not accept a grievance) to the Superintendent.  You may file a separate grievance on the determination by submitting it to the IGRC office." Id.

On or about October 15, 2003, Newman filed a grievance requesting that the October 10, 2003 decision of the IGP supervisor be reversed. See Ullman Decl. (Docket No. 36) at Exs. 5 & 6. Newman alleged that the following "mitigating circumstances" prevented him from filing a timely grievance regarding the October 2002 sexual assaults: "1. I was in transit within the 14 days of the incident; to a number of correctional facilities; in addition to MHU within NYS DOCS; 2. I was confronted with fear (threats); which was made by CO's at Fishkill SHU 200 which I wasn't to make mention of the situation and that he could cause me to be placed in the same situation again and no on[e] would help me." Id.  The IGRC denied

7

Newman's grievance, finding that "[Newman] has been in [Clinton] since Dec. 2002 which gave him adequate time to file complaint which would have been accepted if filed then. Grievant did not provide mitigating circumstances to warrant the acceptance of complaint." Ullman Decl., Ex. 5 at 4. The Superintendent and CORC both denied Newman's appeals, finding that Newman had failed to present mitigating circumstances to excuse his delay in submitting the complaint. See Ullman Decl, Exs. 7 & 8.

In claiming that his non-exhaustion should be excused, Newman makes three arguments. First, he contends that a corrections officer at Fishkill (John Doe) threatened him, warning that if Newman reported the October 29, 2002 sexual assault then he would be placed back in the "same predicament" he was in before. See Newman Dep. at 83. However, Newman was transferred to Clinton in November 2002 and, thus, could have immediately filed a grievance now that he was separated from the officer who threatened him. See Pelc Decl. (Docket No. 36) at Ex. B. Further, Newman testified that he felt "safe" while at Clinton, demonstrating that any fear he may have had surrounding the filing of a grievance was left behind at Fishkill. See Newman Dep. at 66. Moreover, Newman ultimately did file a grievance while at Clinton. See Ullman Decl., Exs. 5 & 6. Thus, Newman's first argument for failure to properly exhaust is not persuasive.

Second, Newman contends that his frequent transfers between DOCS facilities within fourteen days of the sexual assaults prevented him from timely filing a grievance. However, this argument is not persuasive because DOCS regulations state that "[e]ach correctional facility housing a reception/classification/transit inmate population shall insure all inmates access to the IGP." N.Y. Comp. Codes R. & Regs. tit.7, § 701.14. Further, Newman arrived

8

at Clinton on November 15, 2003 and was not moved to another DOCS facility until November 19, 2003, thus affording him nearly a year where he was not "in transit." See Pelc. Decl. at Ex. B.

Third, Newman contends that this Court should apply the "special circumstances" exception under Hemphill because he was dealing with the mental and emotional effects of the sexual assaults, thus preventing his filing of a grievance. See Newman Dep. at 83-84; Pl. Reply Mem. of Law at 2-3; see also Hemphill, 380 F.3d at 686. However, the special circumstances exception under Hemphill concerned an inmate's justifiable confusion regarding the proper DOCS procedure for filing an expedited grievance, not an inmate's mental or emotional condition. See Hemphill, 380 F.3d at 689-91. Thus, absent any documented mental illness that prevented Newman from filing a grievance, his third argument excusing his failure to timely exhaust his administrative remedies is not persuasive.[6]

Therefore, it is recommended that defendants' motion on this ground be granted.

---

[6] Moreover, shortly after the second assault, Newman wrote a letter to his counselor requesting that he be able to correspond with another inmate. See Newman Dep. at 42-43. Thus, in light of his ability to correspond with his counselor shortly after the incident, Newman's contention that he was too emotionally distraught to file a grievance is without merit.

### C. Eighth Amendment[7]

Newman contends that defendants knew or should have know that he was a homosexual and that his placement in a double occupancy cell "facilitated . . . the cause for the incident of attempted rape/physical assault that occurred to plaintiff therein at Fishkill SHU 200, on or about 10/29/02." Compl. at ¶¶ 15, 17, 19, 21, 23.

Prison officials have a duty to protect inmates from violence by other inmates. See Farmer v. Brennan, 511 U.S. 825, 833 (1994). When asserting a failure to protect claim, an inmate must establish that he was "incarcerated under conditions posing a substantial risk of serious harm" and that the defendants acted with deliberate indifference to the inmate's safety. Id. at 834. Deliberate indifference is established when the official knew of and disregarded an excessive risk to inmate health or safety. Id. at 837. However, "the issue is not whether [a plaintiff] identified his enemies by name to prison officials, but whether they were aware of a substantial risk of harm to [him]." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 621 (2d Cir. 1991).

Here, Newman contends that on two separate occasions, fellow inmates "attempted to rape/physical[ly] assault" him. See Compl. at ¶¶ 7, 11, 15, 17, 19, 21, 23. However, it is undisputed that Newman did not suffer any actual injury[8] from these attempted assaults.

---

[7] In his complaint, Newman contends that defendants' conduct constituted cruel and unusual punishment in violation of the Eighth Amendment because their failure to comply with DOCS regulations "facilitated . . . the cause for the incident of attempted rape/physical assault that occurred to plaintiff therein at Fishkill SHU 200, on or about 10/29/02." Compl. at ¶¶ 15, 17, 19, 21, 23. Therefore, Newman's cause of action is best addressed under the Eighth Amendment's failure to protect standard.

[8] To the extent that Newman contends that the attempted assaults caused him any mental or emotional injury, this claim must fail because "[n]o Federal civil action may be

See Defs. Statement of Material Facts (Docket No. 36) at ¶¶ 71-76; Pl. Reply Statement of Facts at ¶¶ 71-76; see also Newman Dep. at 31-32, 35-37, 41-42, 68-74, 95-96; Harris Aff. at Ex. A.  The law is clear that an inmate must demonstrate an "actual injury" when alleging a constitutional violation.  See Brown v. Saj, No. Civ. 06-6272 (DGL), 2007 WL 1063011, at *2 (W.D.N.Y. Apr. 5, 2007) (citing Lewis v. Casey, 518 U.S. 343, 349 (1996)).  These two isolated incidents, coupled with Newman's failure to allege any injury resulting from the attempted sexual assaults, fail to demonstrate a constitutional violation under the Eighth Amendment.  See Boddie v. Schnieder, 105 F.3d 857, 861-62 (2d Cir. 1997) (holding that isolated incidents of sexual assault, without any injury, fail to state an Eighth Amendment claim); see also Brown, 2007 WL 1063011, at *2 (dismissing inmate's failure to protect claim for failure to demonstrate an actual injury).

Therefore, in the alternative, it is recommended that defendants' motion on this ground be granted.

**D. Qualified Immunity**

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would

---

brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e) (2003); see also Thompson v. Carter, 284 F.3d 411, 417 (2d Cir. 2002) (holding that § 1997e(e) "applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury").

have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229 (N.D.N.Y. 2002), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, as discussed supra, accepting all of Newman's allegations as true, he has not shown that defendants violated his constitutional rights.

Therefore, in the alternative, defendants' motion for summary judgment on this ground should be granted.

### E. Failure to Serve Defendant John Doe

Newman's complaint asserts a claim against John Doe, a defendant who has neither been identified nor served with the complaint. Rule 4(m) of the Federal Rules of Civil Procedure requires that service of process be effectuated within 120 days of the date of the filing of the complaint. See also N.D.N.Y.L.R. 4.1(b). Because defendant John Doe has not been identified by Newman or timely served with process, it is recommended that the complaint be dismissed without prejudice against this defendant.

### III. Conclusion[9]

For the reasons stated above, it is hereby

**RECOMMENDED** that:

    1. Defendants' motion for summary judgment (Docket No. 36) be **GRANTED** as to defendants Duncan, Carpenter, VanGuilder, Mazzuca, Ercole, and Conklin and as to all of Newman's causes of action;

    2. The complaint be **DISMISSED** without prejudice as to defendant John Doe; and

    3. This action therefore be **TERMINATED** in its entirety as to all defendants and all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: September 6, 2007  
          Albany, New York

*David R. Homer*  
United States Magistrate Judge

---

[9] Defendants also contend that Newman failed to demonstrate that they were personally involved in the alleged constitutional violations. See Defs. Mem. of Law at 11-14. However, it is recommended herein that defendants' motion should be granted as to all of Newman's claims on other grounds. Thus, this argument need not be addressed.

13